**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | } | |
| TERESA STRICKLAND, | } | CASE NO. 09-41624 |
| | } | |
| Debtor. | } | CHAPTER: 13 |
| | } | |

## OPINION ON TRUSTEE'S OBJECTION TO EXEMPTIONS

This matter is before the Court on the Trustee's Objection to Exemptions (Doc. # 64) and the Debtor's response thereto (Doc. # 73). The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference, as amended, entered by the United States District Court for the Northern District of Alabama. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); therefore, the Court has authority to enter a final order.

For the reasons stated below, the Court is sustaining the Trustee's Objection. In compliance with Rule 7052(a) of the Federal Rules of Bankruptcy Procedure, the following shall constitute the Court's findings of facts and conclusions of law.[1]

### FINDINGS OF FACTS

On June 5, 2009, the Debtor filed this case under chapter 13 of the Bankruptcy Code.[2] After filing her petition, but before confirmation of her proposed plan, the Debtor received a payment of $11,207.64 from the Alabama Department of Human Resources ("DHR") for child support arrears (the "DSO Payment").[3] The Debtor amended Schedule B (Doc. # 60) to disclose receipt of the DSO

---

[1] All "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] 11 U.S.C. § 101 *et seq*, and herein the "Code." All "Section" references are to a section, subsection, paragraph or other subdivision of the Code.

[3] Child support falls within the definition of "domestic support obligation" found in Section 101(14A). Hence for brevity: the "DSO Payment."

Payment, which she described as a "child support lump sum received post-petition on behalf of now adult child, spent for reasonable and necessary living expenses including a move to separate quarters by debtor and 2 dependant (*sic*) (this item is only listed out of abundance of caution as it does not belong to the debtor, but to her now adult child, pursuant to Code of AL Sec. 38-10-10)."[4] She also amended Schedule C to claim the DSO Payment as exempt (Doc. #60). The Trustee objected to the Debtor's claim of exemptions as being excessive (Doc. # 64). The Debtor responded to the Trustee's objection, asserting that the DSO Payment belonged to her now-adult child (Doc. #73). It is undisputed that the DSO Payment received from DHR was in payment of delinquent child support that accrued and became due prepetition. It is also undisputed that the Debtor's son, for whose support the DSO Payment was due, had reached the age of majority when the DSO Payment was received by the Debtor.

CONCLUSIONS OF LAW

*Is the DSO Payment exempt property?*

The Debtor argues that the DSO Payment has no impact on her chapter 13 case because it is exempt property.[5] Alabama opted out of adopting the federal exemptions found in Section 522(d). Ala. Code § 6-10-11; *see also In re Poffenbarger*, 281 B.R. 379, 396 (Bankr. S.D. Ala. 2002)

---

[4]The Court assumes that the total DSO Payment was spent postpetition and before the schedules were amended.

[5] The Debtor claims the DSO Payment as exempt under Alabama Code § 38-10-10, which creates a civil cause of action on behalf of those who are owed a duty of support. This statute has nothing to do with exemptions. Presumably, she cites this statute to lend credence to her claim that the DSO Payment belongs to her adult son. In any event, the Court does not interpret § 38-10-10 as creating a cause of action in favor of an adult child against his parents for support, whether court ordered or otherwise, that was not paid while the child was a minor.

2

(Mahoney, J.). Exemptions available to debtors in Alabama are found in Alabama Code §§ 6-10-1, *et seq*. Alabama Code § 6-10-6 provides a $3,000 personal property exemption to each debtor. There is no separate exemption for child support. Thus, the Debtor may claim the DSO Payment as exempt only under Alabama Code § 6-10-6; however, she has already exceeded the maximum $3,000 personal property exemption on Schedule C, exclusive of the DSO Payment.[6] Inasmuch as the Debtor has already exceeded her $3,000 allowance for personal property exemptions, and because there is no Alabama statute which separately exempts child support, the Debtor cannot claim the DSO Payment as exempt. Thus, the Trustee's objection to exemptions is due to be sustained.[7]

*Does the DSO Payment belong to the Debtor or her now-adult son?*

The Debtor also attempted to shield the DSO Payment from the Trustee and her creditors by claiming that the DSO Payment belongs to her now-adult son for whom she was suppose to receive child support while he was a minor. *See* Sch. B and C. The Debtor relies on *In re Poffenbarger*. 281 B.R. 379 (Bankr. S.D. Ala. 2002) (Mahoney, J.). After filing a chapter 7 case, the debtor in *Poffenbarger*, who was then raising minor children, received a check for delinquent and future child support and alimony. *Id.* at 382 - 84. Judge Mahoney examined principles of Alabama law relating to child support, and recognized that:

---

[6] On Schedule C the debtor claims an exemption for "family" in the amount of $1,000 pursuant to Alabama Code sections 6-10-6 and 6-10-126. Section 6-10-126 provides that a debtor may not waive her right to exempt certain property, such as cooking utensils and wearing apparel; it does not provide a personal property exemption in addition to the $3,000 exemption of section 6-10-6.

[7] The Debtor could have chosen whatever personal property she wished as exempt under Alabama Code § 6-10-6, including up to $3,000 of the DSO Payment.

3

> (1) child support is a fundamental right of the minor child; (2) child support is for the sole benefit of the minor child; (3) child support - even though payable to the custodial parent - is not for the parent's benefit; (4) support arrearages and/or court ordered support due cannot be waived by a custodial parent; and, (5) it is the strong public policy of Alabama in support and custody matters to focus on what is best for the child. Taken together, these principles of the Alabama law lead to the conclusion that from an equitable standpoint child support payments belong to the minor child.
> . . .

*Id.* at 387 - 88. Judge Mahoney concluded that the funds attributable to child support, including the arrears, were to be paid to the debtor for the support of her minor children, while the funds attributable to alimony were to be paid to the chapter 7 trustee. *Id.* at 397.

The Debtor in this case has not convinced the Court that the DSO Payment belongs to her adult son.[8] There are significant differences between the facts of this case and *Poffenbarger*. Unlike the parent in *Poffenbarger*, the Debtor's duty to support her child had already ended when she filed her petition. *See Ex parte Bayliss*, 550 So. 2d 986 (Ala. 1989).[9] Child support was awarded to the Debtor for the benefit of her son while he was a minor; however, the tardy DSO Payment was received too late to be used as intended. While she was raising her son, the Debtor had no choice

---

[8] This Court found no authority stating that child support arrears belong to the child once the child reaches the age of majority. In *W.L.S. v. K.S.S.V.*, 810 So. 2d 777, 780 - 781 (Ala. Civ. App. 2001), the Alabama Court of Civil Appeals upheld the trial court's award of arrears to a mother who brought suit after her daughter had reached the age of majority. *Id.* at 781. It's logical to infer that if the Court of Civil Appeals in *W.L.S.* considered the adult child, and not the mother, as the real party in interest who should have brought the action for arrears, it would have said as much.

[9] As explained by the Alabama Supreme Court in *Bayliss*, a parent may have a responsibility for post-majority support in certain circumstances not present in this case. *Id.* at 992 - 93.

During one hearing on this matter, Debtor's counsel stated that the DSO Payment was needed by the Debtor to set up a new household for the herself and her son. In fact, it appears the Debtor is no longer in possession of the DSO Payment and it has already been used for moving expenses. Regardless, even though she may choose to do so, the Debtor no longer has a legal obligation to support her adult son.

4

other than to pay not only her share of her son's support, but also the share that the father should have been paying but was not. *See Davenport v. Hood*, 814 So.2d 268, 274 - 75 (Ala. Civ. App. 2000), *quoting Gibson v. Bennett*, 561 So.2d 565, 571 - 72 (Fla. 1990). It is plausible, if not probable, that the Debtor incurred debts to make up for the support not timely paid by the father, and these debts contributed, at least in part, to her bankruptcy. In all likelihood the DSO Payment reimbursed the Debtor for funds she had borrowed to compensate for the father's delinquency. Although not the decisive factor in this matter, it is not unreasonable for the Debtor's creditors to benefit from this reimbursement as well.

Additionally, this case differs from *Poffenbarger* in that the debtor in that case filed under chapter 7, while this case is pending under chapter 13. There is a fundamental difference between the two chapters. Chapter 7 provides a debtor with relief from her debts and a financial fresh start in return for the surrender and liquidation of her nonexempt assets. *See generally,* Sections 522, 541, 726, 727. On the other hand, and subject to the best interest test of creditors discussed below, chapter 13 provides a debtor with an opportunity to retain her property, both exempt and nonexempt, by paying plan payments during a 3 or 5 year commitment period, which will satisfy or at least maintain her secured debts, including curing defaults, and entitles her to a discharge of unsecured debts by paying them to the extent of her projected disposable income. *See generally*, Sections 1322, 1325, 1327,1328.

<u>*How should the DSO Payment be treated under the Debtor's plan?*</u>

The Court has concluded that the DSO Payment belongs to the Debtor and not her son, and is not exempt property. Accordingly, there are at least two alternatives for treatment of the DSO Payment under the Debtor's chapter 13 plan. First, the DSO Payment, although received after the

5

Case 09-41624-JJR7    Doc 94    Filed 04/02/10    Entered 04/02/10 10:08:59    Desc Main
Document    Page 5 of 8

petition date, was additional nonrecurring income that should have been paid to the Trustee for distribution to creditors. *In re Anderson,* No. 06-40856, 2009 WL 1065142, at *2 (Bankr.N.D.Ala. Apr. 15, 2009); *see also Waldron v. Brown (In re Waldron)*, 536 F.3d 1239, 1242 (11th Cir. 2008). But according to the Debtor's amended Schedules, the DSO Payment was spent by the Debtor without seeking court approval, and there are no additional liquid assets available to replace the unauthorized expenditures and make an equivalent distribution to unsecured creditors. Spending the DSO Payment without court approval and before its disclosure is most certainly grounds for dismissal of the Debtor's case. Nonetheless, the Court understands how the Debtor could have in good faith, albeit mistakenly, believed the DSO Payment belonged to her son, thus making dismissal of her case too harsh of a remedy. But the unauthorized expenditure of the DSO Payment cannot be ignored.

Rather than require that the Debtor repay the now expended DSO Payment (which is not feasible) or face dismissal of her case, an alternative remedy is to include the DSO Payment in determining whether the best interest of creditors test is being met. The best interest test found in Section 1325(a)(4) provides that a plan shall be confirmed if "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date." If the DSO Payment had not been expended, it would have been available for distribution to unsecured creditors in a liquidation under chapter 7 on the date the plan was confirmed.[10] *See In re Bremer*, 104 B.R. 999, 1007 - 08 (Bankr. W.D.

---

[10]The Debtor's plan was confirmed on January 20, 2010. (Doc. # 81). The Trustee and Debtor's counsel stipulated that confirmation would be without prejudice to either of their rights and remedies with respect to the DSO Payment and how it should be treated under the plan or

6

Mo. 1999) (funds received postpetition but preconfirmation considered in calculation of best interests test). Furthermore, funds received postconfirmation must be disclosed and used in the calculation of the best interests test. *In re Nott*, 269 B.R. 250, 254 (Bankr. M.D. Fla. 2000) (Since the requirements of § 1325(a) apply to postconfirmation modifications an inheritance received postconfirmation was included in the best interest test, calculated as of plan modification date.).

Typically if a debtor receives a nonrecurring, lump sum, postpetition payment, it is paid to the trustee for a one-time distribution to creditors which will result in an increase in the percentage paid to unsecured creditors or will pay off the case more quickly should the debtor already have a 100% plan. However, a debtor is not required to hand over to the chapter 13 trustee in a lump sum the debtor's equity or unencumbered assets owned on the petition date, e.g., equity in real estate. Instead, to the extent the equity or unencumbered assets are not exempt and would be paid to unsecured creditors in chapter 7, the debtor is required to pay their present value into the plan by way of regular periodic payments to the trustee. After all, the chapter 13 scheme is based on the premise that a debtor will keep her property while making payments to the trustee for distribution to her creditors. Thus, the Court concludes that under these facts the present value of the DSO Payment should be included in the calculation – or more accurately the recalculation – of the best interest test of creditors to determine the amount of the periodic payments to be paid to the Trustee pursuant to the Debtor's plan. The Court anticipates the foregoing will require a modification to the existing plan.[11]

---

otherwise.

[11] The Court's opinion in this case should not be interpreted as holding that a debtor who receives an asset postpetition, especially cash or one easily liquidated, may elect to either turn it over to the trustee for a one time distribution to creditors or retain it and recalculate the best

Pursuant to Rule 9021, a separate Order will be entered consist with this opinion.[12]

Dated: April 2, 2010

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge

---

interest test. In most situations, the asset should be treated as additional income that must be paid to the trustee and distributed to unsecured creditors. Moreover, a debtor's postpetition receipt of any material asset requires its preservation, prompt disclosure by way of amended schedules, and a good faith proposal to modify a confirmed plan, or amend a proposed plan. To do otherwise may have repercussions beyond dismissal or conversion of the case. *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1286 (11th Cir. 2002) ("The duty to disclose is a continuing one that dos not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change."); *see also Waldron*, 536 F.3d at 1244 ("[A debtor has a] continuing duty to disclose changes in his financial situation during the pendency of his bankruptcy.").

[12] This Opinion and related Order may be for naught. The Trustee filed a Motion to Dismiss this case (Doc. # 90), alleging the Debtor is delinquent in her plan payments, having not paid since December 10, 2009. The hearing on the Trustee's Motion is scheduled for a hearing on April 15, 2010. The Court is confident that should this case be dismissed, and thereafter the Debtor files a second chapter 13 case, the Trustee will raise good faith issues under Section 1325(a)(3), (7) if the proposed plan in the second case does not take into account the DSO Payment that was wrongfully expended by the Debtor during the pendency of this case.

Case 09-41624-JJR7    Doc 94    Filed 04/02/10    Entered 04/02/10 10:08:59    Desc Main
Document      Page 8 of 8